# ADA TITLE II (laws 35.101-35.108)
## Subpart A—General

**§ 35.101 Purpose and broad coverage.**

✓ (a) *Purpose.* The purpose of this part is to **implement** subtitle A of title II of the Americans with Disabilities Act of 1990 (42 U.S. C. 12131–12134), **as amended by the ADA Amendments Act of 2008 (ADA Amendments Act) (Public Law 110–325, 122 Stat. 3553 (2008))**, which prohibits discrimination on the basis of disability by public entities.

✓ **(b) *Broad coverage.* The primary purpose of the ADA Amendments Act is to make it easier for people with disabilities to obtain protection under the ADA. Consistent with the ADA Amendments Act's purpose of reinstating a broad scope of protection under the ADA, the definition of "disability" in this part shall be construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA. The primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability. The question of whether an individual meets the definition of disability under this part should not demand extensive analysis.**

✓ **§ 35.102 Application.**

- ✓ (a) Except as provided in paragraph (b) of this section, this part applies to all services, programs, and activities provided or made available by public entities.

- ✓ (b) To the extent that public transportation services, programs, and activities of public entities are covered by subtitle B of title II of the ADA, they are not subject to the requirements of this part.

✓ **§ 35.103 Relationship to other laws.**

- ✓ (a) *Rule of interpretation.* Except as otherwise provided in this part, this part shall not be construed to apply a lesser standard than the standards applied under title V of the Rehabilitation Act of 1973 or the regulations issued by Federal agencies pursuant to that title.

- ✓ (b) *Other laws.* This part does not invalidate or limit the remedies, rights, and procedures of any other Federal laws, or State or local laws (including State common law) that provide greater or equal protection for the rights of individuals with disabilities or individuals associated with them.

✓ **§ 35.104 Definitions.**

For purposes of this part, the term—

4

*1991 Standards* means the requirements set forth in the ADA Standards for Accessible Design, originally published on July 26, 1991, and republished as Appendix D to 28 CFR part 36.

*2004 ADAAG* means the requirements set forth in appendices B and D to 36 CFR part 1191 (2009).

*2010 Standards* means the 2010 ADA Standards for Accessible Design, which consist of the 2004 ADAAG and the requirements contained in § 35.151.

*Act* means the Americans with Disabilities Act (Pub. L. 101-336, 104 Stat. 327, 42 U.S.C. 12101-12213 and 47 U.S.C. 225 and 611).

*Assistant Attorney General* means the Assistant Attorney General, Civil Rights Division, United States Department of Justice.

*Auxiliary aids and services* includes—

- (1) Qualified interpreters on-site or through video remote interpreting (VRI) services; notetakers; real-time computer-aided transcription services; written materials; exchange of written notes; telephone handset amplifiers; assistive listening devices; assistive listening systems; telephones compatible with hearing aids; closed caption decoders; open and closed captioning, including real-time captioning; voice, text, and video-based telecommunications products and systems, including text telephones (TTYs), videophones, and captioned telephones, or equally effective telecommunications devices; videotext displays; accessible electronic and information technology; or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing;

- (2) Qualified readers; taped texts; audio recordings; Brailled materials and displays; screen reader software; magnification software; optical readers; secondary auditory programs (SAP); large print materials; accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision;

- (3) Acquisition or modification of equipment or devices; and

- (4) Other similar services and actions.

- *Complete complaint* means a written statement that contains the complainant's name and address and describes the public entity's alleged discriminatory action in sufficient detail to inform the agency of the nature and date of the alleged violation of this part. It shall be signed by the complainant or by someone authorized to do so on his or her behalf. Complaints filed on behalf of classes or third parties shall describe or identify (by name, if possible) the alleged victims of discrimination.
- *Current illegal use of drugs* means illegal use of drugs that occurred recently enough to justify a reasonable belief that a person's drug use is current or that continuing use is a real and ongoing problem.

5

- *Designated agency* means the Federal agency designated under subpart G of this part to oversee compliance activities under this part for particular components of State and local governments.
- *Direct threat* means a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices or procedures, or by the provision of auxiliary aids or services as provided in § 35.139.
- ✓ *Disability*. **The definition of *disability* can be found at § 35.108.**
- *Drug* means a controlled substance, as defined in schedules I through V of section 202 of the Controlled Substances Act (21 U.S.C. 812).
- *Existing facility* means a facility in existence on any given date, without regard to whether the facility may also be considered newly constructed or altered under this part.
- *Facility* means all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located.
- *Historic preservation programs* means programs conducted by a public entity that have preservation of historic properties as a primary purpose.
- *Historic properties* means those properties that are listed or eligible for listing in the National Register of Historic Places or properties designated as historic under State or local law.
- *Housing at a place of education* means housing operated by or on behalf of an elementary, secondary, undergraduate, or postgraduate school, or other place of education, including dormitories, suites, apartments, or other places of residence.
- *Illegal use of drugs* means the use of one or more drugs, the possession or distribution of which is unlawful under the Controlled Substances Act (21 U.S.C. 812). The term illegal use of drugs does not include the use of a drug taken under supervision by a licensed health care professional, or other uses authorized by the Controlled Substances Act or other provisions of Federal law.
- *Individual with a disability* means a person who has a disability. The term individual with a disability does not include an individual who is currently engaging in the illegal use of drugs, when the public entity acts on the basis of such use.
- *Other power-driven mobility device* means any mobility device powered by batteries, fuel, or other engines—whether or not designed primarily for use by individuals with mobility disabilities—that is used by individuals with mobility disabilities for the purpose of locomotion, including golf cars, electronic personal assistance mobility devices (EPAMDs), such as the Segway® PT, or any mobility device designed to operate in areas without defined pedestrian routes, but that is not a wheelchair within the meaning of this section. This definition does not apply to Federal wilderness areas; wheelchairs in such areas are defined in section 508(c)(2) of the ADA, 42 U.S.C. 12207(c)(2).

✓ *Public entity* means—

  - ✓ (1) Any State or local government;
  - (2) Any department, agency, special purpose district, or other instrumentality of a State or States or local government; and

6

- (3) The National Railroad Passenger Corporation, and any commuter authority (as defined in section 103(8) of the Rail Passenger Service Act).

*Qualified individual with a disability* means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

*Qualified interpreter* means an interpreter who, via a video remote interpreting (VRI) service or an on-site appearance, is able to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary. Qualified interpreters include, for example, sign language interpreters, oral transliterators, and cued-language transliterators.

*Qualified reader* means a person who is able to read effectively, accurately, and impartially using any necessary specialized vocabulary.

*Section 504* means section 504 of the Rehabilitation Act of 1973 (Pub. L. 93-112, 87 Stat. 394 (29 U.S.C. 794), as amended.

*Service animal* means any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. Other species of animals, whether wild or domestic, trained or untrained, are not service animals for the purposes of this definition. The work or tasks performed by a service animal must be directly related to the individual's disability. Examples of work or tasks include, but are not limited to, assisting individuals who are blind or have low vision with navigation and other tasks, alerting individuals who are deaf or hard of hearing to the presence of people or sounds, providing non-violent protection or rescue work, pulling a wheelchair, assisting an individual during a seizure, alerting individuals to the presence of allergens, retrieving items such as medicine or the telephone, providing physical support and assistance with balance and stability to individuals with mobility disabilities, and helping persons with psychiatric and neurological disabilities by preventing or interrupting impulsive or destructive behaviors. The crime deterrent effects of an animal's presence and the provision of emotional support, well-being, comfort, or companionship do not constitute work or tasks for the purposes of this definition.

*State* means each of the several States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the Virgin Islands, the Trust Territory of the Pacific Islands, and the Commonwealth of the Northern Mariana Islands.

*Video remote interpreting (VRI) service* means an interpreting service that uses video conference technology over dedicated lines or wireless technology offering high-speed, wide-bandwidth video connection that delivers high-quality video images as provided in § 35.160(d).

*Wheelchair* means a manually-operated or power-driven device designed primarily for use by an individual with a mobility disability for the main purpose of indoor, or of both indoor and outdoor locomotion. This definition does not apply to Federal wilderness areas; wheelchairs in such areas are defined in section 508(c)(2) of the ADA, 42 U.S.C. 12207 (c)(2).

## § 35.105 Self-evaluation.

- (a) A public entity shall, within one year of the effective date of this part, evaluate its current services, policies, and practices, and the effects thereof, that do not or may not meet the requirements of this part and, to the extent modification of any such services, policies, and practices is required, the public entity shall proceed to make the necessary modifications.
- (b) A public entity shall provide an opportunity to interested persons, including individuals with disabilities or organizations representing individuals with disabilities, to participate in the self-evaluation process by submitting comments.
- (c) A public entity that employs 50 or more persons shall, for at least three years following completion of the self-evaluation, maintain on file and make available for public inspection:
    - (1) A list of the interested persons consulted;
    - (2) A description of areas examined and any problems identified; and
    - (3) A description of any modifications made.
- (d) If a public entity has already complied with the self-evaluation requirement of a regulation implementing section 504 of the Rehabilitation Act of 1973, then the requirements of this section shall apply only to those policies and practices that were not included in the previous self- evaluation.

## § 35.106 Notice

A public entity shall make available to applicants, participants, beneficiaries, and other interested persons information regarding the provisions of this part and its applicability to the services, programs, or activities of the public entity, and make such information available to them in such manner as the head of the entity finds necessary to apprise such persons of the protections against discrimination assured them by the Act and this part.

## § 35.107 Designation of responsible employee and adoption of grievance procedures

- (a) *Designation of responsible employee.* A public entity that employs 50 or more persons shall designate at least one employee to coordinate its efforts to comply with and carry out its responsibilities under this part, including any investigation of any complaint communicated to it alleging its noncompliance with this part or alleging any actions that would be prohibited by this part. The public entity shall make available to all interested individuals the name, office address, and telephone number of the employee or employees designated pursuant to this paragraph.



- (b) *Complaint procedure.* A public entity that employs 50 or more persons shall adopt and publish grievance procedures providing for prompt and equitable resolution of complaints alleging any action that would be prohibited by this part.
- § 35.108 Definition of disability
- (a)
- (1) *Disability* means, with respect to an individual:
- (i) A physical or mental impairment that substantially limits one or more of the major life activities of such individual;
- (ii) A record of such an impairment; or
- (iii) Being regarded as having such an impairment as described in paragraph (f) of this section.
- (2) *Rules of construction.*
- (i) The definition of "disability" shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA.
- (ii) An individual may establish coverage under any one or more of the three prongs of the definition of "disability" in paragraph (a)(1) of this section, the "actual disability" prong in paragraph (a)(1)(i) of this section, the "record of" prong in paragraph (a)(1)(ii) of this section, or the "regarded as" prong in paragraph (a)(1)(iii) of this section.
- (iii) Where an individual is not challenging a public entity's failure to provide reasonable modifications under § 35.130(b)(7), it is generally unnecessary to proceed under the "actual disability" or "record of" prongs, which require a showing of an impairment that substantially limits a major life activity or a record of such an impairment. In these cases, the evaluation of coverage can be made solely under the "regarded as" prong of the definition of disability, which does not require a showing of an impairment that substantially limits a major life activity or a record of such an impairment. An individual may choose, however, to proceed under the "actual disability" or "record of" prong regardless of whether the individual is challenging a public entity's failure to provide reasonable modifications.
- (b)
- (1) *Physical or mental impairment* means:
- (i) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or
- (ii) Any mental or psychological disorder such as intellectual disability, organic brain syndrome, emotional or mental illness, and specific learning disability.



(2) *Physical or mental impairment* includes, but is not limited to, contagious and noncontagious diseases and conditions such as the following: orthopedic, visual, speech and hearing impairments, and cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, intellectual disability, emotional illness, dyslexia and other specific learning disabilities, Attention Deficit Hyperactivity Disorder, Human Immunodeficiency Virus infection (whether symptomatic or asymptomatic), tuberculosis, drug addiction, and alcoholism.

(3) *Physical or mental impairment* does not include homosexuality or bisexuality.

(c)

(1) *Major life activities* include, but are not limited to:

(i) Caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, writing, communicating, interacting with others, and working; and

(ii) The operation of a *major bodily function*, such as the functions of the immune system, special sense organs and skin, normal cell growth, and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive systems. The operation of a major bodily function includes the operation of an individual organ within a body system.

(2) *Rules of construction.*

(i) In determining whether an impairment substantially limits a major life activity, the term *major* shall not be interpreted strictly to create a demanding standard.

(ii) Whether an activity is a *major life activity* is not determined by reference to whether it is of *central* importance to daily life.

(d) *Substantially limits.*

(1) *Rules of construction.* The following rules of construction apply when determining whether an impairment substantially limits an individual in a major life activity.

(i) The term "substantially limits" shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. "Substantially limits" is not meant to be a demanding standard.

(ii) The primary object of attention in cases brought under title II of the ADA should be whether public entities have complied with their obligations and whether discrimination has occurred, not the extent to which an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an impairment substantially limits a major life activity should not demand extensive analysis.

- (iii) An impairment that substantially limits one major life activity does not need to limit other major life activities in order to be considered a substantially limiting impairment.
- (iv) An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.
- (v) An impairment is a disability within the meaning of this part if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment does not need to prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.
- (vi) The determination of whether an impairment substantially limits a major life activity requires an individualized assessment. However, in making this assessment, the term "substantially limits" shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for substantially limits applied prior to the ADA Amendments Act.
- (vii) The comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually will not require scientific, medical, or statistical evidence. Nothing in this paragraph (d)(1) is intended, however, to prohibit or limit the presentation of scientific, medical, or statistical evidence in making such a comparison where appropriate.
- (viii) The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures. However, the ameliorative effects of ordinary eyeglasses or contact lenses shall be considered in determining whether an impairment substantially limits a major life activity. Ordinary eyeglasses or contact lenses are lenses that are intended to fully correct visual acuity or to eliminate refractive error.
- (ix) The six-month "transitory" part of the "transitory and minor" exception in paragraph (f)(2) of this section does not apply to the "actual disability" or "record of" prongs of the definition of "disability." The effects of an impairment lasting or expected to last less than six months can be substantially limiting within the meaning of this section for establishing an actual disability or a record of a disability.
- (2) *Predictable assessments.*
- (i) The principles set forth in the rules of construction in this section are intended to provide for more generous coverage and application of the ADA's prohibition on discrimination through a framework that is predictable, consistent, and workable for all individuals and entities with rights and responsibilities under the ADA.
- (ii) Applying these principles, the individualized assessment of some types of impairments will, in virtually all cases, result in a determination of coverage under paragraph (a)(1)(i) of this section (the "actual disability" prong) or

paragraph (a)(1)(ii) of this section (the "record of" prong). Given their inherent nature, these types of impairments will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity. Therefore, with respect to these types of impairments, the necessary individualized assessment should be particularly simple and straightforward.

- (iii) For example, applying these principles it should easily be concluded that the types of impairments set forth in paragraphs (d)(2)(iii)(A) through (K) of this section will, at a minimum, substantially limit the major life activities indicated. The types of impairments described in this paragraph may substantially limit additional major life activities (including major bodily functions) not explicitly listed in paragraphs (d)(2)(iii)(A) through (K).
- (A) Deafness substantially limits hearing;
- (B) Blindness substantially limits seeing;
- (C) Intellectual disability substantially limits brain function;
- (D) Partially or completely missing limbs or mobility impairments requiring the use of a wheelchair substantially limit musculoskeletal function;
- (E) Autism substantially limits brain function;
- (F) Cancer substantially limits normal cell growth;
- (G) Cerebral palsy substantially limits brain function;
- (H) Diabetes substantially limits endocrine function;
- (I) Epilepsy, muscular dystrophy, and multiple sclerosis each substantially limits neurological function;
- (J) Human Immunodeficiency Virus (HIV) infection substantially limits immune function; and
- (K) Major depressive disorder, bipolar disorder, post-traumatic stress disorder, traumatic brain injury, obsessive compulsive disorder, and schizophrenia each substantially limits brain function.
- (3) *Condition, manner, or duration.*
- (i) At all times taking into account the principles set forth in the rules of construction, in determining whether an individual is substantially limited in a major life activity, it may be useful in appropriate cases to consider, as compared to most people in the general population, the conditions under which the individual performs the major life activity; the manner in which the individual performs the major life activity; or the duration of time it takes the individual to perform the major life activity, or for which the individual can perform the major life activity.
- (ii) Consideration of facts such as condition, manner, or duration may include, among other things, consideration of the difficulty, effort or time required to perform a major life activity; pain experienced when performing a major life activity; the length of time a major life activity can be performed; or the way an impairment affects the operation of a major bodily function. In addition, the non-ameliorative effects of mitigating measures, such as negative side effects of medication or burdens associated with following a particular treatment regimen, may be considered when determining whether an individual's impairment substantially limits a major life activity.

✓ (iii) In determining whether an individual has a disability under the "actual disability" or "record of" prongs of the definition of "disability," the focus is on how a major life activity is substantially limited, and not on what outcomes an individual can achieve. For example, someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in one or more major life activities, including, but not limited to, reading, writing, speaking, or learning because of the additional time or effort he or she must spend to read, write, speak, or learn compared to most people in the general population.

✓ (iv) Given the rules of construction set forth in this section, it may often be unnecessary to conduct an analysis involving most or all of the facts related to condition, manner, or duration. This is particularly true with respect to impairments such as those described in paragraph (d)(2)(iii) of this section, which by their inherent nature should be easily found to impose a substantial limitation on a major life activity, and for which the individualized assessment should be particularly simple and straightforward.

✓ (4) *Mitigating measures* include, but are not limited to:

✓ (i) Medication, medical supplies, equipment, appliances, low-vision devices (defined as devices that magnify, enhance, or otherwise augment a visual image, but not including ordinary eyeglasses or contact lenses), prosthetics including limbs and devices, hearing aid(s) and cochlear implant(s) or other implantable hearing devices, mobility devices, and oxygen therapy equipment and supplies;

(ii) Use of assistive technology;

(iii) Reasonable modifications or auxiliary aids or services as defined in this regulation;

✓ (iv) Learned behavioral or adaptive neurological modifications; or

(v) Psychotherapy, behavioral therapy, or physical therapy.
 (e) *Has a record of such an impairment.*

✓ (1) An individual has a record of such an impairment if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.

✓ (2) *Broad construction.* Whether an individual has a record of an impairment that substantially limited a major life activity shall be construed broadly to the maximum extent permitted by the ADA and should not demand extensive analysis. An individual will be considered to fall within this prong of the definition of "disability" if the individual has a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, or was misclassified as having had such an impairment. In determining whether an impairment substantially limited a major life activity, the principles articulated in paragraph (d)(1) of this section apply.

13

(3) *Reasonable modification.* An individual with a record of a substantially limiting impairment may be entitled to a reasonable modification if needed and related to the past disability.

(f) *Is regarded as having such an impairment.* The following principles apply under the "regarded" as prong of the definition of "disability" (paragraph (a)(1)(iii) of this section):

(1) Except as set forth in paragraph (f)(2) of this section, an individual is "regarded as having such an impairment" if the individual is subjected to a prohibited action because of an actual or perceived physical or mental impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity, even if the public entity asserts, or may or does ultimately establish, a defense to the action prohibited by the ADA.

(2) An individual is not "regarded as having such an impairment" if the public entity demonstrates that the impairment is, objectively, both "transitory" and "minor." A public entity may not defeat "regarded as" coverage of an individual simply by demonstrating that it subjectively believed the impairment was transitory and minor; rather, the public entity must demonstrate that the impairment is (in the case of an actual impairment) or would be (in the case of a perceived impairment), objectively, both "transitory" and "minor." For purposes of this section, "transitory" is defined as lasting or expected to last six months or less.

(3) Establishing that an individual is "regarded as having such an impairment" does not, by itself, establish liability. Liability is established under title II of the ADA only when an individual proves that a public entity discriminated on the basis of disability within the meaning of title II of the ADA, 42 U.S.C. 12131–12134.

(g) Exclusions. The term "disability" does not include—

(1) Transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders;

(2) Compulsive gambling, kleptomania, or pyromania; or

(3) Psychoactive substance use disorders resulting from current illegal use of drugs.

§ 35.130 General prohibitions against discrimination

- (a) No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.
- (b)

14

✓ o (1) A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability—

- ✓ (i) Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;
- ✓ (ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;
- (iii) Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;
- ✓ (iv) Provide different or separate aids, benefits, or services to individuals with disabilities or to any class of individuals with disabilities than is provided to others unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others;
- (v) Aid or perpetuate discrimination against a qualified individual with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program;
- (vi) Deny a qualified individual with a disability the opportunity to participate as a member of planning or advisory boards;
- (vii) Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.

✓ o (2) A public entity may not deny a qualified individual with a disability the opportunity to participate in services, programs, or activities that are not separate or different, despite the existence of permissibly separate or different programs or activities

15

- (3) A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration—
    - (i) That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability;
    - (ii) That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities; or
    - (iii) That perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State.
- (4) A public entity may not, in determining the site or location of a facility, make selections—
    - (i) That have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination; or
    - (ii) That have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the service, program, or activity with respect to individuals with disabilities.
- (5) A public entity, in the selection of procurement contractors, may not use criteria that subject qualified individuals with disabilities to discrimination on the basis of disability.

-
    - (6) A public entity may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability, nor may a public entity establish requirements for the programs or activities of licensees or certified entities that subject qualified individuals with disabilities to discrimination on the basis of disability. The programs or activities of entities that are licensed or certified by a public entity are not, themselves, covered by this part.
    - (7)
        - (i) A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.
        - **(ii) A public entity is not required to provide a reasonable modification to an individual who meets the definition of "disability" solely under the "regarded as" prong of the definition of disability at § 35.108(a)(1)(iii).**



16

**§ 35.130 General prohibitions against discrimination**

- (a) No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.
- (b)
    - (1) A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability—
        - (i) Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;
        - (ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;
        - (iii) Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;
        - (iv) Provide different or separate aids, benefits, or services to individuals with disabilities or to any class of individuals with disabilities than is provided to others unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others;
        - (v) Aid or perpetuate discrimination against a qualified individual with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program;
        - (vi) Deny a qualified individual with a disability the opportunity to participate as a member of planning or advisory boards;
        - (vii) Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.
    - (2) A public entity may not deny a qualified individual with a disability the opportunity to participate in services, programs, or activities that are

> not separate or different, despite the existence of permissibly separate or different programs or activities.
>
>   - (3) A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration—
>
> - 
>   - (i) That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability;
>   - (ii) That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities; or
>   - (iii) That perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State.
> - (4) A public entity may not, in determining the site or location of a facility, make selections—
>   - (i) That have the effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination; or
>   - (ii) That have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the service, program, or activity with respect to individuals with disabilities.
> - (5) A public entity, in the selection of procurement contractors, may not use criteria that subject qualified individuals with disabilities to discrimination on the basis of disability.
> - (6) A public entity may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability, nor may a public entity establish requirements for the programs or activities of licensees or certified entities that subject qualified individuals with disabilities to discrimination on the basis of disability. The programs or activities of entities that are licensed or certified by a public entity are not, themselves, covered by this part.
> - 
>   - (7)
>     - (i) A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.
>     - **(ii) A public entity is not required to provide a reasonable modification to an individual who meets the definition of**



18

**"disability" solely under the "regarded as" prong of the definition of disability at § 35.108(a)(1)(iii).**

- 
  - o (8) A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered.
- (c) Nothing in this part prohibits a public entity from providing benefits, services, or advantages to individuals with disabilities, or to a particular class of individuals with disabilities beyond those required by this part.
- (d) A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.
- (e)
  - o (1) Nothing in this part shall be construed to require an individual with a disability to accept an accommodation, aid, service, opportunity, or benefit provided under the ADA or this part which such individual chooses not to accept.
  - o (2) Nothing in the Act or this part authorizes the representative or guardian of an individual with a disability to decline food, water, medical treatment, or medical services for that individual.
- (f) A public entity may not place a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids or program accessibility, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part.
- 
  - o (8) A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered.
- (c) Nothing in this part prohibits a public entity from providing benefits, services, or advantages to individuals with disabilities, or to a particular class of individuals with disabilities beyond those required by this part.
- (d) A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.
- (e)

- o (1) Nothing in this part shall be construed to require an individual with a disability to accept an accommodation, aid, service, opportunity, or benefit provided under the ADA or this part which such individual chooses not to accept.
- o (2) Nothing in the Act or this part authorizes the representative or guardian of an individual with a disability to decline food, water, medical treatment, or medical services for that individual.
- (f) A public entity may not place a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids or program accessibility, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part.
- (g) A public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.
- (h) A public entity may impose legitimate safety requirements necessary for the safe operation of its services, programs, or activities. However, the public entity must ensure that its safety requirements are based on actual risks, not on mere speculation, stereotypes, or generalizations about individuals with disabilities.
- **(i) Nothing in this part shall provide the basis for a claim that an individual without a disability was subject to discrimination because of a lack of disability, including a claim that an individual with a disability was granted a reasonable modification that was denied to an individual without a disability.**